COCA-COLA BOTTLING WORKS OF PITTSBURGH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 21208.   Promulgated March 13, 1930.

*E. B. Strassburger, Esq.*, for the petitioner.
*J. L. Backstrom, Esq.*, and *P. A. Sabastian, Esq.*, for the respondent.

## OPINION.

SEAWELL: The sole question presented is whether an abnormality exists in this case as contemplated by section 327 (d), Revenue Act of 1918, which would permit the petitioner to have its tax computed as provided in section 328 of the same act. The basis of petitioner's contention that it is entitled to the foregoing treatment is that the profits were largely attributable to conditions not reflected in its invested capital, namely, the ownership of a valuable franchise or contract, which was its chief income-producing factor. Section 327 (d) provides, in so far as here material, as follows:

Where upon application by the corporation the Commissioner finds and so declares of record that the tax if determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the

corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in section 328. This subdivision shall not apply to any case (1) in which the tax (computed without benefit of this section) is high merely because the corporation earned within the taxable year a high rate of profit upon a normal invested capital * * *.

At the outset it should be observed it is not claimed that there has been an exclusion from invested capital of any value for assets paid in to the petitioner as prescribed by section 326; that is, as we understand the situation, the petitioner has been given the full benefit of all assets paid in to it. In this respect, the case presented is distinguishable from those of the character before us in *Clarence Whitman & Sons, Inc.*, 11 B. T. A. 1192, and *Rothschild Colortype Co.*, 14 B. T. A. 718. What we have is a situation where the petitioner has a contract which to it has no recognizable value for invested capital purposes, but without which it could not carry on its business, and our question is whether as a result there exists an abnormality which would entitle it to the benefit of the special assessment provisions.

The argument of petitioner is predicated largely upon the proposition that the contract in question had a value on March 1, 1913, of $50,000 and in 1920 of $400,000, that this constituted the principal income-producing asset of the business and that therefore, since no recognition could be given thereto for invested capital purposes, an abnormality exists within the meaning of section 327. We have made no findings as to the value of the contract or its income-producing relation to the business, but have reserved these questions for a discussion in the opinion. (Cf. *Insurance & Title Guarantee Co.* v. *Commissioner*, 36 Fed. (2d) 842.) In the first place, we think it is certainly true that the contract in question was of great importance in connection with the production of income by the petitioner in the sense that it constitutes the basis for its business. Obviously, since the petitioner is engaged in bottling and selling Coca-Cola, a product manufactured under a secret formula, the petitioner could not operate without the contract, but this does not necessarily make of the contract an income-producing asset. The same might be said of many sales or distribution contracts, such, for example, as an automobile sales contract, but the contract itself does not usually produce income; it is the operations under the contract which give rise to income.

The truth of the foregoing statement is illustrated in the case at bar, where the petitioner had the same character of contract from 1902 to 1920, and yet in the years of which we have a record (1911 to 1920), losses were suffered in some years, small income was realized in others and substantial income in still others. And the ex-

planation given for the financial difficulties encountered by the petitioner in 1914 was that it was due to bad management. In all of these years the same kind of a contract was in existence, but this did not produce anything like uniformity of income. The contract itself was based on mutual covenants of the parties and was apparently in every sense consummated in an arm's length transaction. It was certainly highly essential and necessary in the production of income, but we fail to see from the mere fact that it was essential to the production of income that an abnormality exists as contemplated by section 327.

In the next place, it is contended that not only was this contract or franchise the most important income-producing factor in petitioner's business, but also that it had an actual market value on March 1, 1913, of $50,000 and in 1920 of $400,000, and that therefore an abnormality exists in 1920 on account of the fact that none of this value is reflected in invested capital. What may have been the value on March 1, 1913, is of course not material, since no question of exhaustion or gain or loss is involved and since the year with which we are concerned is 1920. While for the purpose of a special assessment determination it is not necessary to fix a definite value for this contract in 1920, we are of the opinion that this contract did have a value at that time, though we are unwilling to say that a value of $400,000 attached thereto. The value of $400,000 as fixed by the witness who testified was based on what he stated to be the general practice for valuing contracts of this character, namely, from $4 to $10 for each gallon of syrup consumed in a given year. We do not doubt, as this witness testified, that sales have been made on this basis, but we are not satisfied that this contract could have been sold on the same basis.

Little information was furnished as to the dates or comparable character of the sales referred to. The contract in effect in 1920 was for a two-year term ending January 1, 1921, without provision for renewal. The original contract was executed in 1902 and extended to December 31, 1904, without provision for renewal, but was kept in effect until December 31, 1918, by successive renewals for two-year periods. An officer of the Coca-Cola Bottling Co. of Chattanooga who was familiar with the practice of that company with respect to the issuance and renewal of these contracts stated that: " We renewed those contracts every two years, I should say, without fail. I don't think we ever cancelled a single one of them." We have no reason to question this statement, but certainly in a valuation of the contract effect should be given to the express provision of the contract, limiting its term to two years, and to the fact that this term did expire at the end of the year before us. Reasonable expectation is not the same as legal right nor does it make this con-

tract perpetual in character. The testimony in *Sumter Coca-Cola Bottling Co.*, 7 B. T. A. 890, on which petitioner places much reliance, was that the contract there in question was perpetual in character. Suffice it to say that when we take into consideration the earnings of the petitioner from 1911 to 1920, the term of the contract, the evidence submitted on which the one witness who testified based his valuation, and the entire record in the case, we are not satisfied that a valuation of $400,000 for the contract is justified. Since it is unnecessary to fix a definite value for the contract, we are unwilling to go further than to say that the contract had some value in 1920 which is not reflected in the assets of the petitioner for invested capital purposes for that year.

But we do not think it necessarily follows that an abnormality exists as contemplated by the statute because a corporation has an asset which is of value and which represents no capital investment on its part, but which may not be included in invested capital. The same is true of the good will of many successful corporations which is built up over a period of years, or the value of a patent after years of successful exploitation as compared with the value when paid in. The statute specifically provides that the special assessment provisions " shall not apply to any case (1) in which the tax (computed without the benefit of this section) is high merely because the corporation earned within the taxable year a high rate of profit upon a normal invested capital." There is certainly nothing in the record to show that the invested capital allowed the petitioner is other than a normal invested capital for a business of this character. Abnormality means at least a deviation from a normal condition. What this petitioner had in the form of an unrecognized asset (for invested capital purposes) would not seem to be other than what is normally found in concerns of a similar character; that is, as we understand the situation, what these first-line bottlers (such as the petitioner) have is a monopoly for bottling and selling Coca-Cola in a given territory and the contracts under which they operate are similar. The profits they realize in a given year are the result of the existence of these contracts, but whether they do realize profits is dependent upon factors outside of the contracts, such as management of the concern, business methods pursued, zeal with which they push the business, capital investment necessary for carrying on the business, etc. And where the full capital which is invested in the business and which is necessary for its operation is recognized for invested capital purposes, we do not think an abnormality exists because there has not been taken into consideration a value which may attach to the contract under which the profits were

realized, but which represents no investment on the part of the petitioner. Cf. *Hub Furniture Co.*, 11 B. T. A. 303; *Mutual Oil Co. of Arizona*, 14 B. T. A. 538; *Troy Motor Sales Co.*, 14 B. T. A. 546; and *Moses-Rosenthal Co.*, 17 B. T. A. 622.

*Judgment will be entered for the respondent.*